[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Marysville Exempted Village Schools Bd. of Edn. v. Union Cty. Bd. of Revision*, Slip Opinion No. 2024-Ohio-3323.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3323

MARYSVILLE EXEMPTED VILLAGE SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* UNION COUNTY BOARD OF REVISION ET AL., APPELLEES; RESIDENCE AT COOKS POINTE, L.L.C., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Marysville Exempted Village Schools Bd. of Edn. v. Union Cty. Bd. of Revision*, Slip Opinion No. 2024-Ohio-3323.]**

*Taxation—R.C. 5715.19—R.C. 5717.01—R.C. 5717.01 as amended effective July 21, 2022, does not apply to cases in which a challenge to an auditor's real-property tax valuation was pending before a board of revision when the amendment took effect—Court of appeals' judgment affirmed and cause remanded to Board of Tax Appeals.*

(No. 2023-0964—Submitted March 26, 2024—Decided September 4, 2024.)

APPEAL from the Court of Appeals for Union County,

No. 14-23-03, 2023-Ohio-2020.

_____

STEWART, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DONNELLY, BRUNNER, and DETERS, JJ., joined. FISCHER, J., dissented, with an opinion.

**STEWART, J.**

{¶ 1} In this appeal, we are asked to determine whether a recent amendment to R.C. 5717.01 that limits a political subdivision's ability to appeal a county board of revision's determination of real estate value for tax purposes to the Board of Tax Appeals ("BTA") applies to cases that were pending before the county board of revision when the amendment took effect. Because the language of the amended statute is written in the present tense and ties the right of appeal to the moment a complaint is filed with a board of revision, we determine that the amended statute does not apply to cases that were pending before a board of revision when the amendment took effect.

{¶ 2} We therefore affirm the decision of the Third District Court of Appeals, which reversed the decision of the BTA dismissing a school board's appeal from a county board of revision's tax valuation of an apartment complex, and we remand this matter to the BTA to consider the appeal.

**Facts and Procedural History**

{¶ 3} On February 25, 2022, appellees Dean and Dave Cook, who are third-party taxpayers, filed a complaint for the 2021 tax year with appellee the Union County Board of Revision ("the board of revision"). In their complaint, the Cooks sought an increase in the property valuation for tax purposes of an apartment complex located in Marysville that is owned by appellant, The Residence at Cooks Pointe, L.L.C. ("the property owner"). The Union County auditor had assessed the true value (i.e., the fair-market value) for the subject property as $8,787,310[1] for

---

1. This figure represents the total value of the subject property, which is split into two parcels—an improved parcel on which the apartment complex sits, which is valued at $8,642,730, and a plot of

the 2021 tax year. The Cooks alleged in their complaint that the property's true value was $24 million based on a "current loan amount [of] $24,000,000.00."[2] On May 3, 2022, appellee the Marysville Exempted Village Schools Board of Education ("the school board") filed a counter-complaint regarding the tax valuation of the same property. Although the school board's calculation of the apartment complex's value differed slightly from the Cooks' calculation, overall, the school board agreed with the Cooks that the county auditor had significantly undervalued the property for the 2021 tax year. The board of revision held a hearing on August 1, 2022. On August 4, the board of revision determined that the Cooks and the school board did not meet their evidentiary burden, citing a "lack of competent or probative evidence" sufficient to change the auditor's property valuation.

{¶ 4} On September 30, the school board appealed the board of revision's denial of its requested increase in value to the BTA. The BTA, however, dismissed the school board's appeal in December 2022 for lack of jurisdiction. In so doing, the BTA cited R.C. 5717.01—which had been amended effective July 21, 2022, *see* 2022 Am.Sub.H.B. No. 126 ("H.B. 126")—as "permit[ting] boards of education to appeal a decision of a county board of revision . . . only if the board of education owns or leases the property at issue in the original complaint." The BTA determined that since there was no dispute that the school board in this case did not own or lease the property in question, the school board could not appeal. The school board appealed the BTA's dismissal to the Third District and the Third District reversed. *See* 2023-Ohio-2020 (3d Dist.). The court of appeals concluded that the July 21,

---

unimproved land that is also identified as property of The Residence at Cooks Point, L.L.C, which is valued at $144,580.

2. Although the record does not make clear the type of loan referred to in the Cooks' complaint, we assume the loan referred to was one taken out by the property owner, using the property as the security interest.

2022 amendment to R.C. 5717.01 did not apply to the school board's appeal from the board of revision's valuation decision here, because the school board's counter-complaint seeking an increase in the auditor's property valuation was filed with the board of revision before the effective date of the amendment. 2023-Ohio-2020 at ¶ 35-37 (3d Dist.). The property owner appealed to this court. We accepted jurisdiction over the following three propositions of law:

> Proposition of Law No. 1: Under the plain reading of amended R.C. 5717.01, a board of education has no authority to appeal a decision of a board of revision issued after July 21, 2022. A court cannot delay the effectiveness of the legislation by reading into the statute a later effective date not expressly provided by the General Assembly.
>
> Proposition of Law No. 2: Amended R.C. 5717.01 is prospective as written.
>
> Proposition of Law No. 3: Amended R.C. 5717.01 is remedial legislation that is not a prohibited retroactive law.

*See* 2023-Ohio-3789.

{¶ 5} These three propositions of law raise the same issue: whether the BTA erred in dismissing the school board's appeal for lack of jurisdiction. Therefore, we address these propositions of law together.

**Real-Property Tax-Valuation Process and H.B. 126**

{¶ 6} Under Article XII, Section 2 of the Ohio Constitution, "[l]and and improvements thereon shall be taxed by uniform rule according to value." R.C. 5713.01 sets forth the criteria for assessing real-property values and provides that county auditors are responsible for conducting appraisals of the real property located within their respective counties. R.C. 5715.19 provides the procedure for

challenging an auditor's property valuation before a county board of revision, and R.C. 5717.01 provides the procedure for appealing a board of revision's decision to the BTA.[3]

{¶ 7} In April 2022, while the valuation challenges were pending before the board of revision in this case, the General Assembly enacted H.B. 126 with an effective date of July 21, 2022. Section 1 of H.B. 126 amended R.C. 5715.19 and 5717.01, while Section 2 repealed the preexisting versions of those statutes. Section 3 provided additional information about the effective date of amendments to the statutory procedure for filing a complaint or counter-complaint with a board of revision under R.C. 5715.19. Section 3 stated:

> (A) The amendment by this act of section 5715.19 of the Revised Code, except for the enactment by this act of division (I) of that section, applies to any original complaint or counter-complaint, as those terms are defined in that section, filed for tax year 2022 or any tax year thereafter.

> (B) The enactment by this act of division (I) of section 5715.19 of the Revised Code applies to any private payment agreement, as defined in that division, entered into on or after the effective date of that enactment.

---

3. County boards of revision are composed of the county treasurer, the county auditor, and a member of the board of county commissioners. R.C. 5715.02. R.C. 5715.11 provides that a board of revision "shall hear complaints relating to the valuation or assessment of real property as the same appears upon the tax duplicate of the then current year." County boards of revision are required to "investigate all such complaints and may increase or decrease any such valuation or correct any assessment complained of, or [they] may order a reassessment by the original assessing officer." *Id.* The BTA is a bipartisan state board composed of three members who are each appointed for six-year terms by the governor with the advice and consent of the senate. R.C. 5703.03. R.C. 5703.02(A)(2) authorizes the BTA to "hear and determine all appeals of questions of law and fact arising under the tax laws of this state in appeals from . . . [d]ecisions of county boards of revision."

{¶ 8} The repealed version of R.C. 5715.19(A) provided a list of persons and entities that had the right to challenge an auditor's property valuation by filing a complaint with a board of revision. Those persons and entities included the owners of the property in question, a local school board, and third-party taxpayers who resided in the county where the property in question was located. Former R.C. 5715.19(A), 2021 Sub.S.B. No. 57. Specifically, former R.C. 5715.19(A) stated:

> Any person owning taxable real property in the county or in a taxing district with territory in the county; such a person's spouse; a tenant of the property owner, if the property is classified as to use for tax purposes as commercial or industrial, the lease requires the tenant to pay the entire amount of taxes charged against the property, and the lease allows, or the property owner otherwise authorizes, the tenant to file such a complaint with respect to the property; . . . the board of county commissioners; . . . the board of township trustees of any township with territory within the county; the *board of education of any school district with any territory in the county*; or the mayor or legislative authority of any municipal corporation with any territory in the county may file such a complaint regarding any such determination affecting any real property in the county . . . .

(Emphasis added.)

{¶ 9} Former R.C. 5715.19(B) provided a list of persons and entities that had the right to receive notice that a complaint challenging an auditor's property valuation had been filed. Additionally, former R.C. 5715.19(B) provided that certain persons and entities had the right to file a separate complaint in support of or in objection to a property-valuation complaint. Former R.C. 5715.19(B) stated:

> Within thirty days after the last date . . . complaints may be filed [under R.C. 5715.19(A)], the auditor shall give notice of each complaint in which the stated amount of overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect determination is at least seventeen thousand five hundred dollars to each property owner whose property is the subject of the complaint, if the complaint was not filed by the owner or the owner's spouse *and to each board of education whose school district may be affected by the complaint*. Within thirty days after receiving such notice, a board of education . . . *may file a complaint in support of or objecting to the amount of alleged overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect determination stated in a previously filed complaint* or objecting to the current valuation.

(Emphasis added.) 2021 Sub.S.B. No. 57.

{¶ 10} Regarding the procedure for a party to appeal to the BTA after receiving an unfavorable decision from a board of revision, former R.C. 5717.01, 2018 Sub.H.B. No. 34, stated:

> An appeal from a decision of a county board of revision may be taken to the board of tax appeals within thirty days after notice of the decision of the county board of revision is mailed as provided in division (A) of section 5715.20 of the Revised Code. Such an appeal may be taken by the county auditor, the tax commissioner, or any board, legislative authority, public official, or taxpayer authorized

by section 5715.19 of the Revised Code to file complaints against valuations or assessments with the auditor.

{¶ 11} While the persons and entities authorized to file complaints with a board of revision did not change with H.B. 126's amendments to R.C. 5715.19(A), the legislation reworded the statute in such a way that it now refers to certain entities differently. Specifically, the amendment deleted "the board of county commissioners," "the board of township trustees of any township with territory in the county," "the board of education of any school district with any territory in the county," and "the . . . legislative authority of any municipal corporation with any territory in the county" from the list of entities authorized to challenge an auditor's property valuation and replaced those terms with the "legislative authority of a subdivision." The General Assembly defined "legislative authority" in the amended statute as "a board of county commissioners, a board of township trustees of any township with territory in the county, the board of education of any school district with territory in the county, or the legislative authority of a municipal corporation with territory in the county." R.C. 5715.19(A). The General Assembly also defined the terms "original complaint" and "counter-complaint" as they are used in the amended statute. *See id.* An "original complaint" is defined as a "complaint filed under division (A) of [R.C. 5715.19]," and a "counter-complaint" is defined as a "complaint filed under division (B) [of R.C. 5715.19] in response to an original complaint." R.C. 5715.19(A).

{¶ 12} Regarding the legislation's effect on R.C. 5717.01, H.B. 126 left intact the list of parties that are authorized to appeal a board of revision's decision to the BTA. However, H.B. 126 amended R.C. 5717.01 to include an exception that limits the circumstances under which a political subdivision may appeal to the BTA to only those instances in which the subdivision owns or leases the property in question. As amended, R.C. 5717.01 now states:

An appeal from a decision of a county board of revision may be taken to the board of tax appeals. . . by . . . any board, legislative authority, public official, or taxpayer authorized by section 5715.19 of the Revised Code to file complaints against valuations or assessments with the auditor, *except that a subdivision*[4] *that files an original complaint or counter-complaint under that section with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision with respect to that original complaint or counter-complaint.*

(Emphasis added.)

**Analysis**

**{¶ 13}** This case requires us to determine whether the former version or the amended version of R.C. 5717.01 applies to the school board's appeal to the BTA. This is a question of statutory interpretation. As with any question of statutory interpretation, our primary objective is to ascertain and give effect to the legislature's intent. *See Sarmiento v. Grange Mut. Cas. Co.*, 2005-Ohio-5410, ¶ 25. "To determine the intent of the legislature, we first look to the plain language of the statute." *State v. Gordon*, 2018-Ohio-1975, ¶ 8, citing *State ex rel. Burrows v. Indus. Comm.*, 1997-Ohio-310, ¶ 5. "When a statute is plain and unambiguous, we apply the statute as written." *Id.*, citing *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 52. We hold that the plain language of amended R.C. 5717.01 makes clear that the amended statute does not apply to cases in which a challenge to an

---

4. Although neither R.C. 5715.19 nor 5717.01 defines the term "subdivision," there appears to be no disagreement among the parties that "subdivision" is intended to mean "political subdivision" and that a school district is a political subdivision. *Accord Avon Lake City School Dist. v. Limbach*, 35 Ohio St.3d 118, 122 (1988) ("We are persuaded that a school district is a political subdivision created by the General Assembly . . . .").

auditor's property valuation was pending before a board of revision when the amendment took effect.

{¶ 14} The amendment to R.C. 5717.01 is written in the present tense and states that an appeal from a decision of a county board of revision may be made to the BTA by any legislative authority, "*except that a subdivision that files an original complaint or counter-complaint under [R.C. 5715.19] with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision with respect to that original complaint or counter-complaint.*" (Emphasis and underlining added.). The fact that amended R.C. 5717.01 uses the present tense "files" instead of the past tense "filed" or "has filed" indicates that the amendment was intended by the legislature to apply prospectively, i.e., to cases filed with a board of revision *after* the amendment took effect. Had the General Assembly used the past tense in its phrasing, that would have indicated an intent that the statutory amendment be applied to cases pending before a board of revision when the amendment took effect. But that is not what the General Assembly did.

{¶ 15} Additionally, the phrasing of amended R.C. 5717.01 clearly ties the right of appeal to the filing of a complaint or counter-complaint with a board of revision and not to the filing of an appeal from a board of revision's decision on a complaint. This indicates that the point in time when the statute becomes effective is the point in time when a political subdivision "files" a complaint or counter-complaint with a board of revision. Since the school board in this case filed a counter-complaint with the board of revision prior to the effective date of H.B. 126, the former version of R.C. 5717.01 controls the school board's right of appeal.

{¶ 16} Indeed, we reached a similar conclusion, albeit in a different context, in *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379. In that case, we determined that when a statutory amendment ties itself to a specific operative event, it is the occasion of the operative event that controls whether the amended statute is applicable to a pending case or whether the prior version of the statute

10

applies. If, for instance, the amended statute in this case had made the filing of an appeal to the BTA the operative event on which the new prohibition on political-subdivision appeals to the BTA was conditioned, then it might be said that the General Assembly intended the amendment to apply to cases that were pending before a board of revision when the amendment took effect. But again, that is not how the General Assembly worded the amended statute.

{¶ 17} Lastly, our conclusion here that amended R.C. 5717.01 applies prospectively, i.e., to cases that were not pending before a board of revision when the amended statute took effect, is bolstered by the context in which the statutory amendment was adopted—specifically, amended R.C. 5717.01's relationship to the amendments imposed by H.B. 126 on R.C. 5715.19. Amended R.C. 5717.01 provides an exception to the prior general rule that political subdivisions could appeal decisions of a board of revisions as a matter of course. The amended statute now restricts a subdivision's appeal rights by stating that "a subdivision that files an original complaint or counter-complaint under [R.C. 5715.19] with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision *with respect to that original complaint or counter-complaint*." (Emphasis added.) R.C. 5717.01. However, the terms "original complaint" and "counter-complaint," which are present in the amended version of R.C. 5717.01, were not present in former R.C. 5717.01 or 5715.19—the statutes that were in effect when the school board in this case filed its counter-complaint.

{¶ 18} The terms "original complaint" and "counter-complaint" are new to this statutory scheme and are a product of H.B. 126's amendments to R.C. 5715.19. Former R.C. 5715.19 did not distinguish an "original complaint" from a "counter-complaint." Instead, former R.C. 5715.19 simply used the term "complaint" to refer to challenges to an auditor's property valuation filed under division (A) of the statute—which represented the first complaint initiating a challenge—as well as complaints brought under division (B) of the statute—which represented

complaints filed in support of or in opposition to the initial complaint. Given that the appeal exception in amended R.C. 5717.01 is tied to the filing of an "original complaint" or "counter-complaint"—terms that did not exist within the statutory scheme when the school board filed its counter-complaint[5] with the board of revision under former R.C. 5715.19(B)—it cannot be said that the General Assembly intended the appeal exception to apply to cases that were pending before a board of revision when the amendment took effect. What is more is that Section 3 of H.B. 126 specifically states that the terms "complaint" and "counter-complaint," as defined in the amendments to R.C. 5715.19, are effective "for tax year 2022 or any tax year thereafter." Importantly, the school board's counter-complaint in this case concerned tax year 2021, not 2022 or any year thereafter.

### Conclusion

{¶ 19} Based on the plain language of amended R.C. 5717.01, we hold that the General Assembly did not intend for the appeals exception contained in the amended statute to apply when a school board had filed a counter-complaint with a board of revision prior to the amended statute's effective date of July 21, 2022. Because the school board in this case had filed a counter-complaint with the board

---

5. Throughout this opinion, we have referred to the complaint the school board filed as a "counter-complaint." We have done so because that is how the school board designated its filing with the board of revision. It appears that even though former R.C. 5715.19(A) did not define an initial complaint filed with a board of revision as an "original complaint" and former R.C. 5715.19(B) did not classify a filing made in response to an initial complaint as a "counter-complaint," these terms were commonly used for such filings prior to the enactment of H.B. 126. Nevertheless, this court has refused to recognize that these terms had any legal meaning under former R.C. 5715.19:

> But although the official-complaint form uses the term "countercomplaint," as does our case law, that word does not appear in the statute itself. Instead, both R.C. 5715.19(A) and 5715.19(B) authorize the filing of a "complaint." For that reason, we will refer to a complaint filed under division (A) of R.C. 5715.19 as an "A complaint," and we will refer to a complaint filed under division (B) as a "B complaint."

*Licking Hts. Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2018-Ohio-3255, ¶ 9.

of revision prior to the effective date of H.B. 126, it maintained the right to appeal the board of revision's decision to the BTA under former R.C. 5717.01. Accordingly, we affirm the judgment of the Third District Court of Appeals, which reversed the decision of the BTA dismissing the school board's appeal for lack of jurisdiction, and we remand the matter to the BTA to consider the school board's appeal.

Judgment affirmed
and cause remanded.

_____

**FISCHER, J., dissenting.**

{¶ 20} I would conclude that the plain language of R.C. 5717.01 as amended effective July 21, 2022, *see* 2022 Am.Sub.H.B. No. 126, prohibits a school board from appealing a decision of a county board of revision related to the valuation of property that the school board does not own or lease, regardless of when the underlying complaint or counter-complaint was filed. I thus respectfully dissent and would reverse the decision of the Third District Court of Appeals.

{¶ 21} Amended R.C. 5717.01 provides that

> [a]n appeal from a decision of a county board of revision may be taken . . . by . . . any board . . . authorized by section 5715.19 of the Revised Code to file complaints against valuations or assessments with the auditor, except that a subdivision that files an original complaint or counter-complaint under that section with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision with respect to that original complaint or counter-complaint.

{¶ 22} In my view, the plain language of this statute clearly indicates the General Assembly's intent that a school board, like appellee the Marysville Exempted Village Schools Board of Education ("the school board"), not be allowed to appeal a board of revision's decision regarding the valuation of property that the school board does not own or lease. It seems to me that in concluding otherwise, the majority opinion's analysis overcomplicates this clear statutory provision.

{¶ 23} The first sentence of amended R.C. 5717.01 (which is the sentence of that statute relevant to this appeal) begins by authorizing a broad range of individuals and entities, namely "the county auditor, the tax commissioner, or any board, legislative authority, public official, or taxpayer authorized by section 5715.19 of the Revised Code," to appeal a decision of a county board of revision by filing complaints against valuations or assessments with the county auditor. The clause following this provision in the statute sets forth an exception to who may file an appeal: "a subdivision that files an original complaint or counter-complaint under [R.C. 5715.19] with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision with respect to that original complaint or counter-complaint."

{¶ 24} Significantly, the right-to-appeal exception in amended R.C. 5717.01 does not set forth *when* or *how* an appeal may be filed. Instead, the exception merely identifies *who may not* file an appeal. Thus, in my view, appellant, The Residence at Cooks Pointe, L.L.C., is correct that the phrase "a subdivision that files an original complaint or counter-complaint" defines a class to which the exception applies and does not function to delay the application of the amended version of R.C. 5717.01 based on when the underlying complaint was filed. In this case, it is undisputed that the school board is a subdivision under R.C. 5717.01 and that the school board filed a counter-complaint regarding the valuation of property that it does not own or lease. *See* majority opinion, ¶ 3, 12, fn. 4. Therefore, according to the plain language of amended R.C. 5717.01, the school

14

board could not file an appeal from the board of revision's decision pertaining to that property.

{¶ 25} The majority opinion's holding appears to be premised on three aspects of the amended version of R.C. 5717.01, which are treated as compelling a conclusion that the prior version of the statute, *see* 2018 Sub.H.B. No. 34, applies in this case. First, the amended version of the statute is "written in the present tense," using the phrase "subdivision that files" (rather than the past tense "subdivision that filed"). Majority opinion at ¶ 14. Second, "the phrasing of amended R.C. 5717.01 clearly ties the right of appeal to the filing of a complaint or counter-complaint with a board of revision." Majority opinion at ¶ 15. Third, "the context in which the statutory amendment was adopted" indicates that the prior version of R.C. 5717.01 did not tie any appeal exception to the filing of an "original complaint" or "counter-complaint," so it cannot be said that the General Assembly intended the appeal exception in the amended version of the statute to apply to cases pending when the amendment took effect. Majority opinion at ¶ 17.

{¶ 26} Each of these points overcomplicates the analysis by essentially treating the identifying phrase "a subdivision that files an original complaint or counter-complaint," R.C. 5717.01, as creating a right to appeal. Again, this phrase is merely a descriptive term identifying "who" is subject to the limited exception to the right of appeal established by R.C. 5717.01. First, the fact that the present-tense word "files" is used rather than the past tense "filed" is a distinction without a difference, because by the time the board of revision has issued its decision, the complaint or counter-complaint will have already been filed, meaning the filing will have always occurred in the past. Second, this identifying phrase does not tie the right of appeal to the filing of a complaint or counter-complaint, because that right is already established in the first clause of amended R.C. 5717.01, with this particular identifying phrase merely setting forth the exception to that general right to file an appeal. Third, the use of the terms "complaint" and "counter-complaint"

in the amended version of R.C. 5717.01 do not impact this analysis, because as noted in the majority opinion, the school board initiated its participation in this case by filing a counter-complaint, *see* majority opinion at ¶ 3, a procedure that predated the amendment to R.C. 5717.01, *see* 2018 Sub.H.B. No. 34.

{¶ 27} An illustration of the above points can be made by examining the primary case relied on by the majority opinion, *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379. The majority opinion states that *Thomas* stands for the proposition that "when a statutory amendment ties itself to a specific operative event, it is the occasion of the operative event that controls whether the amended statute is applicable to a pending case or whether the prior version of the statute applies." Majority opinion at ¶ 16. This court's statutory analysis in *Thomas*, however, undermines the analysis of the majority opinion in this case.

{¶ 28} In *Thomas*, we considered whether a previous version of R.C. 519.12(H) (setting forth a requirement that a referendum petition contain a number of signatures equal to at least 8 percent of the total votes cast for governor in the township at the most recent gubernatorial election) or an amended version of R.C. 519.12(H) (setting forth a requirement that a referendum petition contain a number of signatures equal to at least 15 percent of the total votes cast for governor in the township at the most recent gubernatorial election) applied to a proposed referendum related to a zoning amendment adopted by a board of township trustees two weeks before the amended version of the statute became effective. *Thomas* at ¶ 27-28. In our analysis, we noted that the amended version of the statute provided that the proposed amendment would become effective 30 days after its adoption unless a valid referendum petition was presented to the board within that 30-day window. *Id.* at ¶ 29-30. We emphasized that because the requirements of the statute were tied specifically to the date of the adoption of the zoning amendment, it was logical to apply the amended version of R.C. 519.12(H) only to zoning amendments adopted after the effective date of the amended statute. *Thomas* at ¶ 30.

{¶ 29} If we are to apply the same rationale that we applied in *Thomas* to this case, we must reverse the decision of the court of appeals. To use the phrase employed by the majority opinion in this case, the "specific operative event," majority opinion at ¶ 16, in *Thomas* was the adoption of the zoning amendment, which started the 30-day clock for submitting a referendum petition. Because that "specific operative event" occurred *before* the effective date of the amended version of the statute, the prior version of the statute applied in *Thomas*. In this case, the "specific operative event" under the amended version of R.C. 5717.01 is the mailing of notice of the county board of revision's decision, which starts the 30-day clock for one of the persons or entities identified in that statute to file an appeal from that decision. Because that "specific operative event" occurred in September 2022, *after* the July 21, 2022 effective date of the amended version of R.C. 5717.01, *see* 2022 Am.Sub.H.B. No. 126, we must apply the amended version of that statute here and conclude that the school board was barred from filing its appeal. I accordingly view the rationale applied by this court in *Thomas* as supporting the conclusion that the decision of the court of appeals must be reversed in this case.

{¶ 30} Furthermore, I see no constitutional concerns that would prevent the application of amended R.C. 5717.01 to cases like this. The amended version of R.C. 5717.01 is clearly prospective in nature. It provides that after the statute's effective date, political subdivisions cannot file appeals from decisions of county boards of revision related to the valuation of property that those subdivisions do not own or lease. "Because the law in question applies only prospectively—that is, to [appeals] after its effective date—and because it is a rule of procedure, it does not implicate the Ohio Constitution's prohibition against retroactive laws." *State v. Brooks*, 2022-Ohio-2478, ¶ 28, citing Ohio Const., art. II, § 28 (DeWine, J., concurring in judgment only). I accordingly conclude that no retroactivity concerns exist here, because the amended version of R.C. 5717.01 applies only prospectively,

to cases in which a political subdivision seeks to appeal a decision of a board of revision after the effective date of the statute.

{¶ 31} "When a statute is plain and unambiguous, we apply the statute as written." *State v. Gordon*, 2018-Ohio-1975, ¶ 8, citing *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 52. In my view, this case does not need to be overcomplicated and can be resolved based on the plain language of the amended version of R.C. 5717.01, which provides that "a subdivision that files an original complaint or counter-complaint under [R.C. 5715.19] with respect to property the subdivision does not own or lease may not appeal the decision of the board of revision with respect to that original complaint or counter-complaint." Here, the school board filed a counter-complaint with respect to the valuation of property that it does not own or lease. It therefore may not appeal the board of revision's decision in this case. For these reasons, I respectfully dissent and would reverse the decision of the Third District Court of Appeals.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, Kelley A. Gorry, and Karol C. Fox, for appellee Marysville Exempted Village Schools Board of Education.

Vorys, Sater, Seymour and Pease, L.L.P., Nicholas M.J. Ray, Steven L. Smiseck, and Lauren M. Johnson, for appellant.

Zaino Hall & Farrin, L.L.C., Stephen K. Hall, Thomas M. Zaino, and Robert C. Maier, urging affirmance for amicus curiae, Ohio Chamber of Commerce.

_____